IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SAMANTHA J. WATKINS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 20-cv-3167 |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Administrative Law Judge (ALJ)'s Decision denying Plaintiff Samantha J. Watkins's application for social security disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Motion for Summary Affirmance (Doc. 15). For the reasons that follow, the ALJ's Decision is REVERSED.

### I.   BACKGROUND

On August 18, 2016, Plaintiff filed her application for disability and disability insurance benefits and later amended her alleged onset of disability to March 29, 2017. (R. 205, 246). Plaintiff was 43 years old on her alleged onset date and has at least a high school education. (R. 24). Plaintiff alleges disability due to disorders of back and

peripheral neuropathy. (R. 69). The claims were initially denied on October 21, 2016, and upon reconsideration on July 25, 2017. (R. 73-74; 89-90).

On January 16, 2019, a hearing was held before the ALJ, and both Plaintiff and a vocational expert ("VE") testified. (R. 15). Plaintiff testified that she stopped working in August 2017 due to neck pain. (R. 43). She had two neck surgeries and expected to have a third surgery after the hearing. (R. 47). She experiences numbness and pain in her hands, lower back, and legs. (R. 51-55). She testified that she often drops items and loses her balance due to the numbness in her arms and legs. (*Id.*). After 15 minutes of questioning by her attorney, Plaintiff's testimony was cut short by the ALJ. (R. 58). The VE testified that if an individual was required to maintain their head in a static position, that would eliminate all occupations. (R. 62).

The ALJ found Plaintiff did not have substantial gainful activity since March 29, 2017. (R. 17). The ALJ determined Plaintiff has the severe impairments of cervical degenerative disc disease and right elbow tendinopathy. (R. 17). The ALJ also noted Plaintiff's hypertension is benign as she can control it with medication. (R. 21). The ALJ further determined that Plaintiff's medically determinable mental impairments of depression with anxiety and cannabis use disorder do not cause more than minimal limitation in her ability to perform basic mental work activities, so the ALJ considered those to be non-severe impairments. (*Id.*). The ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 22).

Before step four, the ALJ determined Plaintiff met the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except: can only occasionally climb ladders, ropes, and scaffolds; only occasionally push/pull with bilateral upper extremities; can reach frequently with the bilateral upper extremities; must avoid hazards such as unprotected heights and moving mechanical parts; can no more than occasionally crawl; and, can frequently handle and finger with the bilateral upper extremities.

(R. 22). At step four, the ALJ concluded transferability of job skills is not an issue because Plaintiff does not have past relevant work. (R. 24). When considering Plaintiff's age, education, past work experience, and RFC, the ALJ found a significant number of jobs in the national economy Plaintiff was able to perform under those limitations, specifically: (1) housekeeper/maid, with approximately 143,000 available jobs; (2) bench assembler, with approximately 136,000 available jobs; and (3) sorter, with approximately 110,000 available jobs. (R. 25). Ultimately, the ALJ found Plaintiff was not disabled during the relevant time under the definition of the Social Security Act. (R. 25).

## II. DISCUSSION

### A. Legal Standard

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)

& 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (internal citation omitted).

Plaintiff has the burden of proving she is disabled. 20 C.F.R. § 404.1512(a). For these purposes, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's decision. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Although the task of a court is not to reweigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate

conclusion." *Yurt*, 758 F.3d at 856-57. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sevec v. Kijakazi*, 59 F.4th 293, 297 (7th Cir. 2023) (internal quotations omitted).

**B. Analysis**

Plaintiff argues the ALJ's decision should be reversed for two reasons. First, the ALJ failed to analyze Listing 1.04 based on neuroforaminal narrowing at step three. (Doc. 12 at 7-8). Second, the RFC determination was not supported by substantial evidence. (Doc. 12 at 8-15).

"At step three, the ALJ must determine whether the claimant's impairments are "severe enough" to be presumptively disabling—that is, so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020), *citing* 20 C.F.R. § 404.1525(a). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). When evaluating whether an impairment is presumptively disabling, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The ALJ "must confront the evidence that does not support her conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

Listing 1.04 addresses spinal disorders that result in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Listing 1.04A requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, Listing § 1.04. A finding of disability at step three requires that a claimant establish that she has an impairment that has satisfied, or can be expected to satisfy, a listing's criteria for at least twelve months. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant "has the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

In *Ribaudo*, the Seventh Circuit reversed the ALJ's determination based on the ALJ's insufficient analysis at step three regarding Listing 104A. 458 F.3d at 583. The Seventh Circuit began by reiterating its holdings that the "ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583. The ALJ included only a two-sentence discussion concluding that the plaintiff did not have an impairment that met or equaled the severity criteria of any impairment in the Listings. *Id*. The ALJ failed to mention the specific listings he considered and failed to evaluate the criteria that was favorable to the plaintiff. *Id*. The Seventh Circuit found the ALJ's perfunctory analysis did not provide much assurance that he adequately considered the plaintiff's case. *Id*. at

584. Ultimately, the case was remanded so that the agency could conduct a more thorough analysis of the evidence at step three. *Id.*

Here, the totality of the ALJ's step three analysis was: "The severity of claimant's conditions does not meet or equal the criteria set forth per Listing 100 *et seq.*" (R. 22). Plaintiff argues this was an insufficient evaluation, particularly because cervical myelopathy is associated with damage to the brain, spinal cord, or motor nerves. (Doc. 12 at 8). Defendant argues in response that Plaintiff does not provide evidence that she did meet or equal Listing 1.04's requirements. (Doc. 15-1 at 7-8).

The Commissioner's position fails to acknowledge that the ALJ's short discussion on whether Plaintiff met any listing did not adequately explain the reasoning behind the ALJ's decision. While it is true that Plaintiff has the burden of showing that her impairments meet a listing, *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), an ALJ should mention the specific listings she is considering and her failure to do so, if combined with a "perfunctory analysis," may require a remand. *Ribaudo*, 458 F.3d at 583. Just as in *Ribaudo*, the ALJ in this case provided a perfunctory analysis at step three and did not mention which listings were being considered. (R. 22).

The ALJ did evaluate some of Plaintiff's medical history elsewhere in her decision—including noting Plaintiff's surgical history and myelopathy diagnosis. (R. 18-21). But the ALJ did not connect this evidence to the specific 104A requirements, even though it supported a finding that the criteria in Listing 1.04 was met. There is also other medical evidence in the record that supports Plaintiff's contention that she meets the criteria in Listing 1.04, which the ALJ did not discuss in her evaluation. The record

indicates that Plaintiff's spinal motion was limited. (R. 1040). It also confirms that Plaintiff did report having pain and numbness in her left arm repeatedly to her physicians. (R. 684-85, 788-89, 807, 887, 917, 1032). Later, she told her doctor the pain and numbness was in both arms and legs. (R. 1037). Her doctor observed significant weakness in her left arm on numerous occasions and noted Plaintiff's muscle power and range in movement were limited. (R. 719, 735-38, 744-45, 794-95, 821, 916-17, 939). As the Seventh Circuit pointed out in *Ribaudo*, numbness can be indicatory of sensory loss and lower strength test scores can indicate muscle weakness. *Ribaudo*, 458 F.3d at 583-84.

Although the ALJ mentioned some of the medical evidence in her analysis, the ALJ did not discuss why the Listing 1.04A criteria was not met based on this evidence, or why she found that evidence to be unpersuasive. The ALJ's failure to evaluate the criteria in Listing 104A means that the ALJ failed to build a logical bridge from the evidence to her conclusion. *See Ribaudo*, 458 F.3d at 583-84. Therefore, just as in *Ribaudo*, this case must be remanded for a more thorough analysis.

Based on the Court's conclusion that remand is necessary for the aforementioned reasons, the Court need not delve into the remaining errors claimed by Plaintiff. However, the Court advises the Commissioner not to presume the issues were excluded from the judgment due to lack of identified errors. On remand, the Commissioner should take special care to develop the analysis at step three and formulate an RFC based on the medical evidence.

### III. CONCLUSION

IT IS ORDERED that the decision denying benefits to Plaintiff Samantha J. Watkins is REVERSED, and this case is REMANDED to Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, for further proceedings consistent with this opinion.

ENTER: September 26, 2023

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE